## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9029 | **DATE** | 12/19/2003 |
| **CASE TITLE** | USA ex rel. Santiago vs. Charles Hinsley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ____ .
(3) ☐ Answer brief to motion due ____ . Reply to answer brief due ____ .
(4) ☐ Ruling/Hearing on ____ set for ____ at ____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ____ set for ____ at ____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ____ set for ____ at ____ .
(7) ☐ Trial[set for/re-set for] on ____ at ____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ____ at ____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Santiago's application is denied and he is ordered to pay the $5 filing fee. (3-1) This Court orders the summary dismissal of the Petition(id.). That renders the previously-entered stay and Santiago's Motion for Appointment of Counsel moot, and of course, also vacates the previously-scheduled May 25, 2004 status hearing. (4-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 2 2 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | AR | 5 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/19/2003 | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel. )
JIMMY SANTIAGO N74164, )
)
Petitioner, )
)
v. ) No. 03 C 9029
)
CHARLES HINSLEY, WARDEN, )
)
Respondent. )

DOCKETED
DEC 22 2003

MEMORANDUM OPINION AND ORDER

Jimmy Santiago ("Santiago") is serving consecutive state court sentences of 70 years for first degree murder and 30 years for attempted first degree murder in a case that was indicted just over a decade ago. On December 15, 2003 his effort to obtain federal habeas relief--a Petition for Writ of Habeas Corpus ("Petition") brought under 28 U.S.C. §2254[1]--arrived in this District Court's Clerk's Office, and the judge's copy of the Petition arrived in this Court's chambers the next day, December 16.

This Court immediately (indeed, on December 16) prepared a memorandum order ("Order") providing for a stay of the Petition because it was a so-called "mixed petition," so that such a stay was required to allow the possibility for all of Santiago's claims to be considered here once the state court system had resolved his presently unexhausted claims--those that Santiago

---

[1] All further references to Title 28's provisions will simply take the form "Section--."

had contemporaneously tendered to the Circuit Court of Cook County in a second post-conviction petition.[2] But as the Order concluded by saying, this Court expected in the meantime to look into whether the Petition itself posed any problems that might call for different treatment, a procedure contemplated by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules").

To that end this Court has now obtained copies of (1) the Illinois Appellate Court's December 24, 2001 unpublished summary order in its Case No. 1-99-3628, affirming the Cook County Circuit Court's summary dismissal of Santiago's initial post-conviction petition, and (2) the Illinois Supreme Court's one-word December 5, 2002 denial (reported in table at 202 Ill.2d 652, 787 N.E.2d 166 (2002)) of leave to appeal from that Appellate Court decision. And although the Houston v. Lack, 487

---

[2] As Order 1 n.1 reflects, the actual issuance of the Order was delayed for two days because the case file was being processed in the Clerk's Office, so that this Court did not yet have access to Santiago's contemporaneously submitted Application for Leave To Proceed In Forma Pauperis (he had filed only an original, and not a judge's copy, of that Application). That processing has now been completed, and the printout of Santiago's inmate trust fund account at Tamms Correctional Center ("Tamms") unsurprisingly reflects that Santiago can pay the $5 filing fee for this case. Hence the Application is denied, and a copy of this memorandum opinion and order is being transmitted to the appropriate authorities at Tamms with a direction to promptly remit that amount via check or voucher payable to the "Clerk, United States District Court" and mailed to 219 South Dearborn Street, Chicago, Illinois 60604, attention: Fiscal Department (clearly identifying Santiago's name and the 03 C 9029 case number assigned to this action).

U.S. 266 (1988) "mailbox rule" means that the December 15 date of receipt of Santiago's current Petition in the Clerk's Office is not the relevant date for timeliness purposes, Santiago's own handwritten signing of the Petition carries a December 9, 2003 date (a date further confirmed by a number of references to that same date in his handwritten submission that accompanied the Petition). So the time interval between (1) the final disposition of Santiago's original post-conviction petition in the state courts on December 5, 2002 (for that purpose, our Court of Appeals has held in Gutierrez v. Schomig, 233 F.3d 490, 491-92 (2000) that the time within which Santiago could have filed a certiorari petition to the United States Supreme Court from the ultimate denial of that state post-conviction petition did not toll the limitation period established by Section 2244(d)(1)(A)) and (2) the Petition's presumptive filing date of December 9, 2003 was four days more than one year.

There is no question that Santiago has been and is well aware of the one-year limitation period on Section 2254 petitions established by Section 2244(d)(1)(A), as well as of the tolling provision of Section 2244(d)(2) that may interrupt the ticking of the one-year clock applicable to this case under Section 2244(d)(1)(A). That is clear from the three-page handwritten statement, which Santiago submitted together with the Petition, in which he describes his last-minute efforts to come within the

3

one-year period that began on December 5, 2002 and ended December 5, 2003. To avoid any possible mischaracterization of Santiago's contentions in that respect, this Court attaches a photocopy of that handwritten statement.

Because the matters adduced by Santiago in that statement do not justify an equitable extension of the statutory timetable in any event, there is no need to explore the possibility--or even the likelihood--that some period of time (perhaps even a substantial period) may already have elapsed on the one-year time clock before Santiago launched his initial state post-conviction petition in the Circuit Court of Cook County. In that respect, the clock would have begun to tick on December 22, 1998, a date derived by adding to the September 23, 1998 date of affirmance of his conviction by the Illinois Appellate Court in its unpublished order in Case No. 1-95-1818 the 90-day period within which certiorari could have been (but was not) sought from the United States Supreme Court (Anderson v. Litscher, 281 F.3d 672 (7th Cir. 2002), noted with apparent approval in Clay v. United States, 537 U.S. 522, 528 n.3 (2003), has so held). That being true, if Santiago's initial post-conviction petition had not been filed in the Circuit Court by December 22, 1998, any elapsed time after that date until its actual filing would be counted against the one-year total limitations period before the suspension prescribed by Section 2244(d)(2) kicked in.

4

But even without any consideration of that possibility, this Court's approach to the matter is controlled by our Court of Appeals' recent teaching in Modrowski v. Mote, 322 F.3d 965, 967 (7th Cir. 2003), as well as in the earlier cases on which Modrowski relies:

> Equitable tolling excuses an untimely filing when "[e]xtraordinary circumstances far beyond the litigant's control...prevented timely filing." [United States v.] Marcello, 212 F.3d [1005,] 1010 [(7th Cir. 2000)]. We rarely deem equitable tolling appropriate-- in fact, we have yet to identify a circumstance that justifies equitable tolling in the collateral relief context. See, e.g., Lloyd [v. Van Natta], 296 F.3d [630,] 633 [(7th Cir. 2002)](prisoner's lack of access to trial transcript does not warrant equitable tolling); Montenegro v. United States, 248 F.3d 585, 594 (7th Cir. 2001)(equitable tolling not justified by lack of response from attorney, language barrier, lack of legal knowledge, and transfer between prisons), overruled on other grounds by Ashley v. United States, 266 F.3d 671 (7th Cir. 2001); Marcello, 212 F.3d at 1010 (equitable tolling not warranted by unclear law and death of attorney's father); see also Brooks v. Walls, 279 F.3d 518, 525 (7th Cir. 2002)(noting that little room remains for tolling unless the petitioner falls within one of the statutorily provided circumstances for tolling in 28 U.S.C. §2244(d)). But cf. Johnson v. McCaughtry, 265 F.3d 559, 567-68 (7th Cir. 2001) (Evans, J., dissenting)(equitable tolling justified by petition filed mistakenly in wrong forum by prisoner's attorney).

And in the course of rejecting the ground advanced in that case for equitable tolling (attorney incapacity), Modrowski, id. at 968 went on to say:

> We will not revisit our long-standing determination that petitioners bear ultimate responsibility for their filings....
>
> In that context there is simply no basis for equitable

5

relief on the ground that Santiago's last-minute attempt to beat the known December 5, 2003 deadline turned out to be unsuccessful. That statement itself confirms that Santiago cannot voice a legitimate complaint because some delays were encountered in his belatedly-instituted efforts to complete, in time to meet the December 5, 2003 deadline, a number of procedures that required some action both by others and by Santiago himself.

As Santiago's own statement acknowledges, he had not begun the first step needed to complete one of those procedures (in this instance the submission of his handwritten 84-page second post-conviction petition to the prison's legal services people for copying) until November 30 (incidentally, a Sunday). Indeed, Santiago's description of part of what he himself had to accomplish in time for a December 5 filing (in the "mailbox rule" sense) admits that he did not even begin drafting the Petition itself until December 3.[3] And the statement discloses added matters that also necessarily posed risks of delay, all of those things together simply underscoring the unreasonableness of Santiago's having delayed so long when he knew he was swiftly

---

[3] In that respect, Petition Part III (which calls for the statement of a petitioner's claims) comprises 16-1/2 closely written pages setting out five asserted grounds for relief. It is obvious that preparing Santiago's articulate statement and then writing it out in longhand--which he had to do twice, once for the court original and once for the judge's copy, because he apparently lacked access to a photocopy machine--alone had to occupy a good deal of time.

6

coming up against a deadline. It is really irresponsible for anyone to take such risks of missing a fatal deadline, and then to expect to be bailed out on equitable grounds. Because Santiago bore the "ultimate responsibility" (Modrowski, 322 F.3d at 968) for filing and hence for timeliness, he is not entitled to equitable relief when (as could well have been anticipated) he missed the deadline.

In sum, this case poses just another variation on the kinds of circumstances that Modrowski and the cases it cites have found insufficient to invoke equitable tolling. In the language of Section 2254 Rule 4, "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."[4] That being so, this Court orders the summary dismissal of the Petition (id.). That renders the previously-entered stay and Santiago's Motion for Appointment of Counsel moot and, of course, also vacates the previously-scheduled May 25, 2004 status hearing.

Milton I. Shadur
Senior United States District Judge

Date: December 19, 2003

---

[4] It is true that this opinion has gone outside of the "four corners" of Santiago's Petition--but it has done so only to the extent of obtaining information from the public records about his prior state court litigation, matters of which it is of course proper to take judicial notice.

7

Petitioner, whom, is of Hispanic descent, does not comprehend the rudiment of law to well and in fact has very little education, has prepared a secondary/amended States Post-Conviction Petition, with the help of another prisoner, therein containing other important Constitutional violations discovered to have occurred in Petitioner's case that were not raised in his first Post Conviction Petition, due to governmental interferences under the conditions of his imprisonment at Tamms C.C., depriving Petitioner of adequate access to legal services, research material and persons trained in law, and denies access to help from jailhouse lawyers which prevent Petitioner from being able to learn and/or to discern the presence of the additional discovered violations had in his to have included them in his first Post Conviction Petition for review and relief.

On or about November 30, 2003 Petitioner submitted his hand written 94 page P.C. Petition to the prison legal services for copying, requesting prompt return to allow him to be able to submit it to the state court, by mail, for exhaustion and to tow the running of the time for filing of this here Habeas Corpus Petition, on issues raised in the first P.C. Petition and the state's highest court. Illinois allows a second P.C. Petition under certain circumstances, (People v Pitsonbarger 2002 Ill); and

-1-

also (Houston v Lack); However, To Date, December 2, 2003 Legal Service Has not Returned The P.C. Petition, the Petitioner To have mailed it out, As Hoped, IN Time To Toll The Time For Filing This Here Habeas Corpus Petition. On 12-5-03, Receiving The P.C. Petition, useless For Tolling, or maybe not, see, infra, ZPP problems.

By December 3, 2003 Legal Service not having Returned The P.C. Petition, Petitioner Sensed problems and began to Drafting This Here Habeas Corpus Petition, For filing So As To preserve his right To present Habeas review on the Exhausted claims, along with also including abbreviated versions of The Issues intended for state Court in said Secondary P.C. Petition, on which Petitioner Prays This District Court, if need be, To relax the Exhaustion requirement, based on cause and prejudice from the Governmental interference Preventing Presentation, Review and Relief before The state Courts, depriving Petitioner of Due Relief on The new issues, and To Allow him leave To proceed before This Court on The New Unexhausted And Exhausted Claims. However, he still intends to send The Secondary P.C. Petition, To The State Court To Try To Exhaust, whenever legal Service Returns it.

Also on December 3, 2003 Petitioner, Uncertain whenever

-2-

Legal Service had already processed the payment slip he had given for the P.C. Petition copies (Petitioner only had more enough to cover the cost of the copies in his institutional account). Sent the Trust Fund Office an application to proceed without prepayment of fees and affidavit for them to verify his financial status and provide the necessary 6 month ledger required for Petitioner to submit with this Writ Habeas Corpus Petition, for leave to proceed hereon, which usually only takes one (1) day to do. It is now five (4) days and still no application or ledger done, which prevented Petitioner from mailing this Petition in a timely manner. The Toual Reiau Trust Office's failure to duly provide the required information, caused Petitioner to miss the 12-5-03 filing date from the date of Zaiusil Supreme Court decision on 12-5-02 on the exhausted issues and constitutes another governmental impediment violation on his right to access to the court which shorten out the limitation period for filing this Habeas Corpus Petition. This impediment and delay may also have residual affects in the timing of filing the P.C. Petition. Petitioner likely will receive back tomorrow and dead date tomorrow, Kuoten, super, the P.C. trial. The habeas trial. Petitioner did not expect any of this or it's interferences at all.

-3-